28 F.3d 110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisco PEREZ-MONRAGON, a/k/a Francisco Monzon-Olivas;
a/k/a Sanchez Y-San Fernando; a/k/a Francisco P.
Monragon, Defendant-Appellant.
 No. 93-50625.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 21, 1994.*
Decided June 28, 1994.
 
 Before: TANG, PREGERSON, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Francisco Perez-Monragon appeals his convictions, following a jury trial for conspiracy to possess and possession with intent to distribute heroin in violation of 21 U.S.C. Secs. 841(a)(1) 846, and use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). Monragon contends the district court erred by denying his motion for judgment of acquittal because the evidence was insufficient to support his convictions. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 There is sufficient evidence to support a conviction if, "a reasonable jury, after viewing her evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt." United States v. Mares, 940 F.2d 455, 458 (9th Cir.1991). "[C]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." Id. In evaluating the sufficiency of the evidence, we must respect the exclusive province of the jury to determine the credibility of witnesses. United States v. Boone, 951 F.2d 1526, 1536 (9th Cir.1991).
 
 
 4
 * Drug Offenses
 
 A. Conspiracy
 
 5
 "To prove a conspiracy, the government must show (1) an agreement (2) to engage in criminal activity and (3) one or more overt acts in furtherance of the conspiracy." United States v. Smith, 924 F.2d 889, 894 n. 1 (9th Cir.1991) (quoting United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 493 U.S. 863 (1989)). Once the conspiracy is established, evidence showing beyond a reasonable doubt even a slight connection between the defendant and the conspiracy is sufficient for conviction. United States v. Restrepo, 930 F.2d 705, 709 (9th Cir.1991). "Mere proximity to the scene of a crime is not sufficient to establish a connection to the conspiracy, but acts that otherwise appeal innocent, when viewed in context, may support an inference of guilt." Mares, 940 F.2d at 458.
 
 
 6
 Here, Sheriff Carrasco testified to the following. On December 16, 1992 he met Monragon's codefendant Avendano and bought one hundred dollars worth of heroin from him. Avendano was accompanied by a man whom Carrasco believed to be a lookout. During the transaction, the lookout stood outside Avendano's vehicle and observed the surrounding area.
 
 
 7
 On December 22, 1992, Carrasco met Avendano in a gas station to discuss another drug transaction. While Carrasco and Avendano met, Monragon remained in the truck looking around in different directions, but not looking directly at Monragon and Carrasco. During the meeting, Avendano invited Carrasco to accompany him to a storage facility where he could watch Avendano weigh out the heroin. Carrasco refused.
 
 
 8
 A government agent then testified that after meeting with Carrasco, Avendano and Monragon drove to a storage facility. Avendano parked next to a storage locker and went in and out of the storage unit several times carrying a stroller and a package. Monragon stayed mainly outside the passenger side of the vehicle but occasionally entered the storage locker. A subsequent search of the storage locker revealed a portable television set on the floor with narcotics paraphernalia and heroin and cocaine stored behind it.
 
 
 9
 Leaving the storage locker, Monragon and Avendano drove to a restaurant where Carrasco was waiting. Avendano pulled alongside of Carrasco's car, so that the driver's door of his vehicle was slightly behind that of Carrasco. Avendano entered into the passenger side of Carrasco's car to give him the heroin. Monragon remained inside the truck but slid over to the driver's side, so that he was sitting above and behind Carrasco who could not see him.
 
 
 10
 Shortly thereafter, deputies arrested Monragon and Avendano. During Monragon's arrest, a loaded .45 caliber semiautomatic pistol fell from the jacket he was wearing. A subsequent search of the truck revealed a bag containing about 50 grams of cocaine on the floor of the passenger's side where Monragon had been sitting and where his heels would have touched if they had been together. A search of Avendano's apartment revealed .45 caliber bullets. A fingerprint analysis, however, revealed that Monragon's fingerprints were not on the heroin packaging material, nor was Monragon listed as a person who had authorized access to Avendano's storage space.
 
 
 11
 Monragon testified that he had been visiting Avendano, an old friend, and had slept at his apartment. The next day Avendano agreed to take Monragon home in a truck that had been left at his house by a third party. On their way to Monragon's house, they stopped at a gas station so that Avendano could talk to a friend and at a storage locker where Avendano wanted to pick up some baskets for children. Monragon testified that he was carrying a gun at the time of his arrest because he had put on a jacket that had been left in the truck and the gun was in one of the pockets. He did not tell Avendano about the gun because he had decided to steal it. Avendano offered to buy him lunch and that was why he was with Avendano at the restaurant. He was sitting in driver's side of Avendano's vehicle so that he could operate the stereo while Avendano talked to a friend.
 
 
 12
 Viewed in the light most favorable to the government, the circumstantial evidence was sufficient to sustain Monragon's conviction for the conspiracy. Monragon was present with Avendano throughout the entire drug transaction. See Mares, 940 F.2d at 459 (finding relevant the fact that codefendant was at the scene during the actual transfer of drugs to buyer). He had a loaded gun in his pocket and the bullets matched those found in Avendano's apartment. Monragon accompanied Avendano to the storage locker where the heroin was weighed and packaged. Agents found a cocaine bundle on the floor of the truck where he had been sitting. Based upon the coordinated activity between Monragon and Avendano and the circumstances surrounding the arrest, a rational jury could have found beyond a reasonable doubt that Monragon was involved in a conspiracy to possess with intent to distribute heroin and cocaine. See United States v. Miguel, 952 F.2d 285, 288-89 (9th Cir.1991) (evidence sufficient to find defendant guilty of conspiracy to possess with intent to distribute marijuana where defendant went with his father into the desert in the middle of the night, stood by while the marijuana was loaded into a truck, and ran from the Border Patrol).
 
 B. Possession with Intent to Distribute
 
 13
 Monragon contends that there was insufficient evidence of dominion or control over the heroin to sustain his conviction for possession with intent to distribute. We reject this argument. The existence of coconspirator liability obviates the need for proof of constructive possession. See Mares, 940 F.2d at 460.
 
 II
 Use of a Firearm
 
 14
 To support a conviction for violation of section 924(c)(1), the evidence must show that a weapon was both "related to" the crime, and "available to" the defendant. A weapon's close proximity to illegal narcotics constitutes evidence of its relation to the underlying drug offense, while use can be shown by evidence of the weapon's availability, even if the defendant did not use the gun or could not have taken physical possession of it. United States v. Torres-Medina, 935 F.2d 1047, 1048-49 (9th Cir.1991) (that defendant was a paraplegic incapable of retrieving gun found in crawl space under his house did not preclude finding that gun was available) (citations omitted).
 
 
 15
 Here, given that Monragon carried a loaded semiautomatic on his body during the entire drug transaction, the evidence was sufficient to support Monragon's conviction for "using" a weapon in relation to the crime. See id.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3